UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. SA-23-CV-00632 |
| | ) | |
| $20,000.00, MORE OR LESS, IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules Civil Procedure, and respectfully states as follows:

## I.
## NATURE OF THIS ACTION

This action is brought by the United States of America seeking forfeiture to the United States of the following property:

- **$20,000.00, More or Less, in United States Currency,**

hereinafter referred to as the "Respondent Currency".

## II.
## JURISDICTION AND VENUE

Under Title 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under Title 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture.    This Court has *in rem* jurisdiction over the Respondent Currency under Title 28 U.S.C. §§ 1355(b)(6) and 1395.    Venue is proper in this district pursuant to Title 28 U.S.C. § 1355(b)(1)(A) because

the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to Title 28

U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Respondent Currency is found in this district.

### III.
### STATUTORY BASIS FOR FORFEITURE

This is a civil forfeiture action *in rem* brought against the Respondent Currency for

violations of Title 21 U.S.C. §§ 801, *et. seq.,* and subject to forfeiture to the United States of

America pursuant to Title 21 U.S.C. § 881(a)(6), which states:

**§ 881. Forfeitures**
**(a)   Subject property**
The following shall be subject to forfeiture to the United States and no property
right shall exist in them:
                                          ***

**(6)**   All moneys, negotiable instruments, securities, or other things of value
furnished or intended to be furnished by any person in exchange for a
controlled substance or listed chemical in violation of this subchapter, all
proceeds traceable to such an exchange, and all moneys, negotiable
instruments, and securities used or intended to be used to facilitate any
violation of this subchapter.

### IV.
### FACTS IN SUPPORT OF VIOLATIONS

On June 13, 2022, a confidential source (hereinafter referred to as "CS") informed Drug

Enforcement Administration (DEA) agents that a man named James Dennis EDWARDS was

looking to purchase cocaine and crystal methamphetamine. EDWARDS resided in the state of

Georgia. The CS was in the garage door business and EDWARDS was in the construction

business.   The CS had previously met EDWARDS online, while looking for clients related to the

garage door business. During the course of their communications, EDWARDS inquired about the

narcotics trade in San Antonio, Texas. The CS told EDWARDS that he was not a narcotics broker,

but the CS knew someone that could assist.   Further, the CS told EDWARDS that the CS could

arrange a call between EDWARDS and a narcotics broker, if EDWARDS so desired.

2

EDWARDS stated that he wanted to speak to the broker on the phone before arranging a trip to San Antonio, Texas.

On June 17, 2022, the CS called EDWARDS to telephonically introduce a DEA undercover agent (hereinafter referred to as "UC") acting in the capacity of a narcotics broker that was in the business of selling methamphetamine and cocaine. After the conversation, EDWARDS offered to fly into San Antonio, Texas from Georgia to meet the broker and negotiate a potential purchase of methamphetamine and cocaine. Subsequently, EDWARDS made his own travel arrangements and paid for his airfare to San Antonio, Texas.

On June 21, 2022, EDWARDS flew to San Antonio to meet the CS and the UC in a controlled meeting.  During this meeting, EDWARDS told the UC that EDWARDS was interested in purchasing cocaine. EDWARDS also told the UC that EDWARDS sells kilograms of cocaine between the prices of $19,000 and $20,000 a kilogram in Georgia. EDWARDS mentioned to the UC that the kilograms that he sells has scorpion and dolphin stamps on them. EDWARDS told the UC that EDWARDS does not cut (dilute) the kilograms and will either sell the kilograms in whole or half-kilogram quantities. EDWARDS expressed an interest in purchasing 10 kilograms of cocaine.   The UC explained to EDWARDS that the UC would have to verify with his supplier on a price of 10 kilograms of cocaine for $18,000 a kilogram. EDWARDS informed the UC that EDWARDS would have to find a larger stash house (storage location) in Georgia if EDWARDS were to purchase 10 kilograms of cocaine.

Between June 2022 and January 2023, the CS was in contact with EDWARDS regarding the purchase of cocaine or methamphetamine. EDWARDS contacted the CS approximately 15 times during this time period. EDWARDS mentioned to the CS that he was selling between 10 to 15 kilograms of cocaine a week in Georgia and EDWARDS wanted to find the narcotics at a lower

price to increase profit. EDWARDS told the CS that EDWARDS was looking to purchase methamphetamine and cocaine in San Antonio, Texas, because it was cheaper than purchasing it in Georgia.

During January 2023, EDWARDS told the CS that EDWARDS was going to again fly to San Antonio, Texas, this time to purchase five kilograms of methamphetamine. The CS stated that EDWARDS wanted to buy methamphetamine due to it being less expensive than cocaine. The CS told DEA agents that EDWARDS refers to methamphetamine as "cream."

On January 11, 2023, EDWARDS told the CS that EDWARDS would be flying into San Antonio, Texas the following day, with $20,000 in cash to purchase five kilograms of methamphetamine.  In one of the calls, EDWARDS suggested that he would need to bring a money-counting machine for future transactions.  EDWARDS told the CS that EDWARDS wanted to continue purchasing narcotics in the future after purchasing the initial five kilograms of methamphetamine. Like the previous trip, EDWARDS made his own travel arrangements and paid for his airfare to San Antonio, Texas.

On January 12, 2023, DEA agents and officers established surveillance at the San Antonio International Airport. DEA Agents were notified by the CS that EDWARDS called the CS and stated that he arrived in San Antonio. Agents and Officers observed EDWARDS exit the ramp of a Frontier Airlines gate. Agents maintained surveillance of EDWARDS, until EDWARDS reached the baggage claim area. Previously, DEA Agents met with the CS to search the CS and the CS's car which did not contain currency or contraband. The CS called EDWARDS to tell EDWARDS the CS was in the vicinity. The CS drove to the arrivals area of the airport and picked up EDWARDS. The CS called DEA agents to confirm that EDWARDS had the bulk currency for the

purchase of the methamphetamine with him. DEA agents and officers continued surveillance on the CS's vehicle as the CS and EDWARDS departed the airport.

A Bexar County Sheriff's Officer (BCSO) conducted a traffic stop of the CS vehicle for a traffic violation. During the traffic stop, BCSO deputies were granted consent to search the CS vehicle and observed bulk U.S. currency in the center console of the vehicle. The CS notified agents that EDWARDS had placed two white envelopes into the center console of the vehicle.

EDWARDS was interviewed regarding the large amount of U.S. currency located inside the center console. EDWARDS claimed ownership of the $20,000 and stated that he was purchasing a building with the money. When asked what type, EDWARDS stated a "taco building." EDWARDS was asked for the contact information of the seller of the "taco building" and EDWARDS replied his name was "Corrales." EDWARDS stated that he did not know the individual's first name. EDWARDS was asked where the taco stand was located, and EDWARDS stated "330, I don't know." EDWARDS was asked if he had the phone number for "Corrales," and EDWARDS was unable to provide any additional information. Moments later, another investigator asked EDWARDS what he intended to purchase with the money and EDWARDS claimed he was buying a taco stand for $3,000 U.S. currency. The agents noticed several inconsistences throughout their interview regarding the real purpose of the U.S. currency.

BCSO eventually concluded the search of the vehicle and released EDWARDS. An official count revealed the total amount of money seized during the traffic stop was $20,000, which represents the Respondent Currency. DEA agents believed that the $20,000 was going to be used to purchase five kilograms of methamphetamine from the UC at the rate of $4,000 per kilogram of methamphetamine. The going rate for methamphetamine was between $3,300 to $4,500 per kilogram in the San Antonio, Texas area during the time this transaction was negotiated.

5

As detailed above, EDWARDS negotiated the price, type of drug (methamphetamine), and quantity with the CS prior to traveling to the San Antonio, Texas area to conduct the illegal drug transaction. Further, EDWARDS' criminal history record reveals that on January 14, 2010, EDWARDS was convicted of the felony offense "Trafficking in Cocaine, Illegal Drugs, Marijuana, or Methamphetamine," in Dekalb County, Georgia.

## CONCLUSION

Given the totality of the circumstances outlined herein, the facts reasonably establish that the Respondent Currency is illegal drug proceeds from violations of Title 21 U.S.C. § 801, et. seq. and is subject to forfeiture to the United States of America pursuant to Title 21 U.S.C. § 881(a)(6).

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Currency, that due notice pursuant to Rule G(4) be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] and in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Fed. R. Civ. P., that the Respondent Currency be forfeited to the United States of America, that the Respondent Currency be disposed of in accordance with the law and for any such further relief as this Honorable Court deems just and proper.

---

[1]Appendix A, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Currency.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By: _____

RAY A. GATTINELLA
Assistant United States Attorney
Asset Forfeiture Section
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7040
Fax: (210) 384-7045
Texas Bar No. 00798202
Email: Ray.Gattinella@usdoj.gov

Attorneys for the United States of America

## **VERIFICATION**

Special Agent Daniel Woelfel, declares and says that:

    1.   I am a Special Agent with the Drug Enforcement Administration, assigned to the San Antonio District Office, and am the investigator responsible for the accuracy of the information provided in this litigation; and

    2.   I have read the above Verified Complaint for Forfeiture and know the contents thereof; that the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based on information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

    Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this the   __16th__   day of May 2023.

                                      _____
                                        Daniel Woelfel, Special Agent
                                        Drug Enforcement Administration
                                        San Antonio District Office